329 P.2d 422

STATE of New Mexico ex rel. STATE
HIGHWAY COMMISSION of New Mexi-
co, Plaintiff-Appellee,

v.

W. I. DAVIS and C. M. Goen d/b/a Contract
Carrier Co., and F. M. Danley, Defend-
ants-Cross-Claimants and Cross-Defend-
ants-Appellees,

Lloyd C. Helm, Administrator of the Estates
of H. F. Lafferty and Martella Lafferty,
Deceased, Defendant-Cross-Defendant and
Cross-Claimant-Appellant.

MOUNTAIN STATES MUTUAL
CASUALTY COMPANY, Cross-
Claimant-Appellee,

William Henry Seaver, Administrator of the
Estates of Melvin Henry Seaver, Thelma
Seaver, Philip Weldon Seaver, Gary L.
Seaver, Catherine E. Seaver, and Steven
Leslie Seaver, Deceased, Plaintiff in In-
tervention-Appellant,

v.

W. I. DAVIS and C. M. Goen d/b/a Contract
Carrier Co., Defendants in Interven-
tion-Appellees.

No. 6186.

Supreme Court of New Mexico.

Aug. 1, 1958.

Catron & Catron, Santa Fe, Lloyd C. Helm, Douglas, Ariz., Wesley E. Polley, Phoenix, Ariz., for appellants.

John T. Watson, Santa Fe, for State Highway Com.

Merritt W. Oldaker, Roy F. Miller, Jr., William H. Oldaker, Albuquerque, for W. I. Davis, C. M. Goen and F. M. Danley.

Hugh R. Horne, Albuquerque, for Mountain States Mut. Cas. Co.

BRAND, District Judge.

A short distance north of Truth or Consequences (formerly Hot Springs, New Mexico) the main highway which runs from Albuquerque to El Paso crosses a narrow bridge over Cuchillo Creek. Just north of the bridge a side road to the Elephant Butte Reservoir enters the highway from the east. On a clear January day at about one o'clock P.M. a car containing eight persons, H. F. Lafferty and his wife, and Melvin H. Seaver, his wife and their four children, approached the highway from the east, having been sight-seeing at Elephant Butte. Coming down the highway from the north at about 40 to 45 miles per hour was a loaded tractor-trailer of 18 wheels with a total weight of 35 tons, owned by Davis & Goen and driven by F. M. Danley. Whoever was driving the Lafferty car ignored the stop sign at the intersection and entered the highway at about 20 to 25 miles per hour, turning left toward the bridge without checking speed immediately ahead of the approaching truck. The car's side and rear windows were steamed over, the occupants could not see out, and there was no indication that the driver was aware of the truck. The truck driver had applied his air brakes and commenced to sound his horn as soon as he saw that the car was preparing to enter the highway, and was unable to pass the slower moving car because it straddled the center line of the road. His attempts to avoid a collision were in vain and his vehicle struck the rear of the car at about the north end of the bridge. The shock drove the passenger car through the bridge railing, and it fell to the creek bed and immediately caught fire, all its occupants being killed. The loaded trailer also fell off the bridge but the tractor came to rest perched on the edge of the rail with the driver pinned in the cab, he being seriously injured. The only witnesses to the accident were the truck driver and a John Millican, who was driving north on the highway and had just crossed the bridge when he observed the crash through his rear view mirror.

Sometime later the State Highway Commission of New Mexico brought suit against the owners and the driver of the truck, and Helm, administrator of the Lafferty estates, for damages to the bridge caused by the collision.

After voluminous pleadings were settled, Seaver, administrator of the estates of the deceased Seavers, and Mountain States Mutual Casualty Company, compensation insurance carrier for Davis & Goen, had been added as parties. There were claims asserted by the State for damages to its bridge; by the truck owners for loss of cargo and vehicle; by the truck driver for personal injuries; by Administrators Helm and Seaver for the wrongful deaths of the

persons who lost their lives; and by Mountain States in subrogation for compensation paid the truck driver.

The controversies, however, emerged, after a long and arduous jury trial, as a rather simple dispute between the owners and driver of the truck as plaintiffs, and the estates of the decedents as defendants and cross-plaintiffs. The jury found all issues in favor of the (so-called) plaintiffs, and awarded more than $50,000 damages against the two administrators.

There was never any serious complication from a factual standpoint. The only questions were whether the truck driver negligently operated his vehicle so as to have caused the collision, or whether the driver of the passenger car was the one at fault. The jury by its answer to interrogatories found that the driver of the Lafferty car was negligent and that such negligence was the cause of the accident; that Danley, the truck driver, was free from negligence, and that he was confronted with a sudden emergency and acted as a reasonable and prudent man under the circumstances confronting him. By its answers and verdicts, it also found against the administrators on the doctrine of "last clear chance".

Appellants rely on five points for reversal, which will be treated in order, Point 1 complaining of the Court's refusal to give requested instructions Numbers 6, 13 and 15.

Number 6 reads as follows:

"*No. 6.* In connection with the doctrine of sudden emergency, you are instructed that where the operator of a motor vehicle himself creates the emergency, or brings about the perilous situation, through his own negligence, he cannot avoid liability on the ground that his acts were done in an emergency. Therefore, in this case, if you believe from a preponderance of the evidence that Danley, in operating the tractor-trailer being driven by him, immediately prior to the accident involved, created an emergency or brought about a perilous situation, through his own negligence, then the doctrine does not apply and cannot be relied on by either Danley or his employers, Davis and Goen.

"Furthermore, in connection with the doctrine of sudden emergency, you are instructed that if you believe from a preponderance of the evidence, that Danley had ample time and space to avoid the accident that occurred, then the doctrine does not apply and cannot be relied upon by either Danley or his employers, Davis and Goen."

On this proposition, the Court gave the following instructions:

"No. 18. There has been invoked in this case in behalf of Danley, the operator of the tractor of the Tractor-

Trailer, and in behalf of Davis and Goen, his employers, what is commonly called the 'sudden emergency doctrine'. Applied to the present case, this doctrine is that if you believe from a preponderance of the evidence that Danley, in operating the tractor-trailer being driven by him, immediately prior to the accident involved and without negligence on his part, was placed in a position of imminent peril to himself or the occupants of the Lafferty automobile by a sudden emergency, without sufficient time in which to determine with certainty the best course to pursue, then he is not to be held to the same accuracy of judgment as that which would have been required of him under ordinary circumstances, and he, and Davis and Goen, as his employers, under such circumstances, would not be liable for the death of the Laffertys and Seavers and loss of the Lafferty automobile; nor would he and Davis and Goen thereby be precluded from recovering for the personal injuries and personal property damage sustained by them, even though a course of action other than that pursued by Danley might have been more judicious; provided you further believe from a preponderance of the evidence that Danley, in the stress of the emergency exercised such care to avoid an accident as would have been exercised by a person of ordinary prudence similarly situated.

"The 'sudden emergency' doctrine is not an exception to the general rule requiring ordinary care in the operation of a motor vehicle, but the emergency, if any, is one of the circumstances to be taken into consideration in determining whether Danley exercised reasonable care under all of the circumstances disclosed by the evidence.

*"Given—No. 19:*

"You are instructed that the law does not require the same degree of judgment or care from a person when confronted with a sudden emergency or peril, through no fault of his own, as is required under ordinary circumstances when a person has an opportunity to think and act with deliberation. If you find from the evidence that because of the negligence of the driver of the Lafferty automobile, the party Danley was confronted with a sudden emergency through no fault of his own, you should give proper consideration to this rule of law and should not find that Danley, and it follows, Davis and Goen, were guilty of contributory negligence unless you find from a preponderance of the evidence that Danley failed to use that degree of care which a person of ordinary care and prudence would have used

when confronted with such an emergency.

*"Given—No. 20:*

"You are instructed that if you find on the occasion mentioned in the evidence, that F. M. Danley was driving defendants' tractor without negligence on his part over and along the westerly half of U. S. Highway 85 near the Cuchillo Negro River Bridge mentioned in the evidence, and that said driver was suddenly confronted by an automobile which had, without warning, pulled out in front of him, and that thereupon said driver, not having sufficient time to determine with certainty the best and safest course to pursue, turned his tractor to the left and then to the right in an attempt to pass said automobile, which action in any way, shape or form caused the accident of which Administrators Lloyd C. Helm and William Henry Seaver complain, and that in doing so, if you so find that said driver exercised such care as a prudent and careful driver would have exercised under the circumstances then and there existing, then F. M. Danley aforesaid was not negligent and said Administrators, and each of them, are not entitled to recover from Davis and Goen, employers of said driver."

Appellant insists that while the court gave the three instructions copied above on the doctrine of sudden emergency, it erred in refusing No. 6, for the reason that this doctrine was the "main theory" relied upon by appellees, and that whether or not Danley was actually faced with a sudden emergency was "one of the main issues at the trial." Having read the entire record, (the recording of the argument on appeal having also been made available to this writer) we cannot agree that this was the "main theory" relied upon. The primary issue was—whose negligence caused the collision, and "sudden emergency" was a secondary phase, probably unnecessary to a determination of the issues but raised by appellees out of an abundance of precaution, although not improperly. As argument that appellant's choice of an instruction on this doctrine should have been given, it is urged that one of appellant's theories was that there was in fact no "sudden emergency;" that Danley had ample time and space to have avoided the accident; that this theory is supported by the testimony of two expert witnesses to the effect that Danley, at the speed he testified to, could have stopped before reaching the point of collision and, in the alternative, that if there was a sudden emergency, it was created by Danley's negligence.

It is also said (Point 5) that the prejudicial effect of the failure to give this instruction was compounded when the court submitted its special interrogatories Numbers 5 and 6, as follows:

*"Special interrogatory No. 5*

"Do you find that F. M. Danley was confronted with a sudden emergency not of his own making immediately prior to the accident?

"Yes———No———"

*"Special Interrogatory No. 6*

"If your answer to Interrogatory No. 5 is in the affirmative, do you believe that F. M. Danley acted as a reasonable man under similar circumstances would have acted in an attempt to avert the accident?

"Yes——— No———"

The jury answered both of these in the affirmative.

We subscribe to appellees' statement that the sudden emergency doctrine was not evolved as a means of enabling parties to prove negligence in the first instance but is rather a formula whereby a jury may determine that acts which would constitute negligence under normal circumstances do or do not constitute negligence in the face of sudden peril. Furthermore, the expert witnesses nowhere testified that Danley could have brought his vehicle to a stop before the collision. A summary of their testimony is that by the use of formulae based on tests run on vehicles of this type, to determine the required stopping distances at various speeds, certain average minimum and maximum distances can be estimated; that in order to make a reasonably accurate determination of the stopping distances at a particular time and place under particular conditions and with a particular type of unit test runs must be made (from which, of course, the exact conditions of the actual occurrence would in some particulars vary); that any computation made by the use of a study of probabilities is merely an estimate.

These were experts testifying from hypothetical questions and could not of course testify that Danley could have brought his vehicle to a stop before reaching the point of collision. At most, they could only tell the jury that according to accepted formulae, to have stopped prior to collision was a possibility. The jury chose to believe the other, factual testimony of the witnesses to the accident, which was wholly uncontradicted and, if true, negated the conclusions advanced by the experts.

Instruction No. 13 which was refused reads:

"In order for Mr. Helm and Mr. Seaver, as administrators, to recover from Davis and Goen for the deaths of Mr. Lafferty, Mrs. Lafferty, Mr. Seaver, Mrs. Seaver and Philip Weldon Seaver under the doctrine of last clear chance, heretofore explained to you, it need not appear that said Laffertys and Seavers were physically unable to escape from their position of peril, but if you believe from a preponderance of the evidence that they were totally un-

aware of their danger and further believe that Danley actually saw and knew of the danger to which they were exposed, and also knew, or in the exercise of ordinary care should have known that they were unaware thereof, and you further believe that Danley had a clear chance, by the exercise of ordinary care, to avoid the accident that occurred, but that he negligently failed to do so, then you must find against the defense of contributory negligence raised by Davis and Goen, and find your verdict in favor of Mr. Helm and Mr. Seaver, as the administrators of the respective estates involved, and against Davis and Goen, even though you may also believe that the negligence of said deceased person continued and concurred with that of Danley up to the very instant of the accident."

The court instructed on "last clear chance" by No. 24 which reads:

"We have a rule of law known as the doctrine of last clear chance. When the facts of a case are such as to invoke the doctrine, its effect is to place liability on the person who had the last clear chance to avoid an accident, and who did not do so. To be more specific, in the present case, in connection with:

"A. The cross-claim of Mr. Helm against Davis and Goen, on account of the deaths of H. F. Lafferty and Martella Lafferty, and

"B. The complaint in intervention of Mr. Seaver against Davis and Goen, on account of the deaths of Melvin Henry Seaver, Thelma Seaver, ~~and Phillip Welden Seaver~~. s/D.W.C. the doctrine of last clear chance may be invoked, if you find from a preponderance of the evidence that the following facts existed:

"1. That H. F. Lafferty, Martella Lafferty, Melvin Henry Seaver and Thelma Seaver, all now deceased, were negligent, or chargeable with the negligence of some one of the others imputable to him or her.

"2. That as a result of such negligence, said persons were in a position of peril from which they could not escape by the exercise of ordinary care.

"3. That F. M. Danley knew or in the exercise of ordinary care should have known of their peril.

"4. That F. M. Danley had a clear chance, by the exercise of ordinary care, to avoid the accident that occurred, but negligently failed to do so.

"Therefore, if you believe from a preponderance of the evidence that all of the conditions above mentioned existed in respect to the accident involved, then you must find against

the defense of contributory negligence raised by Davis and Goen, and find your verdicts in favor of Mr. Helm and Mr. Seaver as administrators of the respective estates involved, because under such circumstances, the law holds Davis and Goen as *the* employers of Danley, liable, despite the negligence of said Laffertys or Seavers.

"No. 24–A

"The above instruction with reference to the last clear chance, was prepared and phrased by the Court with the view of pointing out to the jury that at least in some phases of the case, Danley was alleged to have had the last clear chance.

"However, the Court wishes to specifically point out to you that from the standpoint of Davis and Goen and Danley, that they also contend that it was the driver of the Lafferty car who had the last clear chance. Therefore, in considering the above instruction as to points 1 to 4, both inclusive, you should also reverse the position of the parties to determine whether or not, from a preponderance of the evidence, those facts existed."

Appellants insist that their instruction covers a phase of the doctrine which they were entitled to have submitted, namely, a situation where the parties in peril are totally unaware of such peril, as distinguished from the situation where the parties in peril,

while aware thereof, are unable to escape therefrom. They cite Merrill v. Stringer, 58 N.M. 372, 271 P.2d 405, as supporting this view. In that case a pedestrian (plaintiff) ran diagonally across the street outside the crosswalk into the path of an approaching automobile. She was admittedly negligent and could only prevail under the "last clear chance" doctrine. The court stated, as epitomized in paragraph 1 of the syllabi, as follows:

"For last clear chance doctrine to be applicable, plaintiff must, as a result of her negligence, be in a position of peril from which she cannot escape by exercise of ordinary care, and defendant, who knows or should have known of such peril, must have had clear chance, by exercise of ordinary care, to avoid injury to plaintiff but failed to do so, but plaintiff need not be physically unable to extricate herself if she is wholly unaware of danger and defendant actually sees perilous position and could have avoided injury by exercise of ordinary care."

They say also that there was substantial evidence from which the jury could have found that the occupants of the Lafferty car were totally unaware of their peril and, for that reason, unable to escape it. We can agree that these people were unaware of their peril and, going further, agree that Danley should have known of their unawareness—that since he could not see into

the side or back windows, it can be assumed that the driver could not see him through the rear-view mirror as he bore down on the car. If, however, the fact that they could not and did not see him, because of the fogged-over windows or inattention to other traffic on the road, persuaded the driver that she might safely continue (as Danley testified) to straddle the center of the highway, thus giving the truck no room to pass on either side, what difference can it make whether Danley knew they were ignorant of their peril or not? Blackfield (Cyd. of Law & Practice, Vol. 4, Part 2, Ch. 77) states:

> "The evidence must be clear and certain that the accident could have been averted by the exercise of reasonable care" and "where the peril and the accident occur almost simultaneously, the doctrine is not applicable."

The court also gave Instructions No. 17 and No. 23 on this proposition, reading:

*"No. 17.*

> "You are instructed that though the driver of a motor vehicle on a highway may assume that another motorist on the highway will obey the law and is not chargeable with negligence in so assuming, this does not mean that such driver, in the operation of his motor vehicle, may ignore and disregard what is obvious. Therefore, in the present case, even though Danley would not be chargeable with negligence in assuming that the driver of the Lafferty car in entering and thereafter proceeding along the highway would obey the law, nevertheless, if you further believe the driver of the Lafferty car in entering and proceeding along the highway violated the law in some respect, but that such violation of the law was obvious to Danley or would have been obvious to a person exercising ordinary care under the same circumstances, then it was the duty of Danley to exercise such care as would have been used by a person of ordinary prudence under the same circumstances to avoid running into the Lafferty car, and the violation of law by the driver of the Lafferty car would not excuse the failure of Danley to use such care, if you believe from the evidence that he failed to do so, and his failure to exercise such care would constitute negligence."

*"No. 23.*

> "You are instructed that the mere fact that Danley on approaching the intersection involved had the right-of-way over the Lafferty car, if you believe such was the case under the circumstances disclosed by the evidence, would not justify him in plunging ahead regardless of consequences, if you believe that he did so, or justify his failure to exercise the care of an ordinary prudent person, under the cir-

cumstances of the case, to avoid a collision with the Lafferty car.

"You are further instructed that if you believe from the evidence that Danley had reason to think, as an ordinary prudent person, that because of negligence on the part of the driver of the Lafferty car, if you believe there was such negligence, he would not be given the right-of-way, then it became his duty to exercise such care as would have been exercised under the circumstances by an ordinary prudent person, to avoid colliding with the Lafferty car, whether by stopping, slowing down or turning."

The court refused Instruction No. 15 which reads:

"*Requested No. 15:*

"In addition to the laws relating to speed, on which you have heretofore been instructed, our law further provides:

" '64–18–1. Speed Restrictions—(d) No truck, truck tractor, road tractor, or farm tractor in excess of 80 inches in width, shall at any time be operated at a speed in excess of 50 miles per hour.'

"Therefore, in the present case, if you believe, from a preponderance of the evidence, that the tractor-trailer being operated by Danley was in excess of 80 inches in width, and that Danley, immediately prior to the accident that occurred, was operating the same at a speed in excess of 50 miles per hour, then you are instructed that Danley was guilty of negligence as a matter of law."

The vehicle driven by Danley was within the purview of this statute because of its width, and appellants say that one of their theories was that it was being driven at a speed greatly in excess of that to which he testified; that the testimony of the expert witnesses as to where he applied his brakes, the evidence of the speed of the Lafferty car, the force of the impact between the vehicles, damage to the bridge railing and the distance traveled by the vehicle before coming to a stop, constituted ample evidence which would have justified the jury in finding that Danley was driving at a speed of more than 50 miles per hour.

The court gave an instruction (No. 31) on our basic speed law providing,

"No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing", etc.,

and told the jury that, if they found that Danley failed to comply with the law but was driving at a greater speed than was reasonable and prudent, he was guilty of negligence as a matter of law.

There was no evidence to the effect that this truck was exceeding a speed of

50 miles per hour, and absent such a showing, the tendered instruction was out of place and properly refused. We find no error as is charged in Points 1 and 5.

■ Point 2 asserts error in the giving of Instructions 21, 29 and 32, the first reading:

"*No. 21*

"You are instructed that if you find that the tractor-trailer was on the west or right-hand side of the highway and that the Lafferty automobile was at the time and place of the collision on the east or its left-hand side of the highway across or astraddle the center line thereof, and thus preventing said tractor-trailer from passing said automobile, and that the collision between the said automobile and said tractor-trailer was caused by the failure of the operator of Lafferty automobile to keep said automobile to the right of the center of said highway and to give the right-of-way to said tractor-trailer, then your verdict shall be against Administrators Helm and Seaver on their claims and in favor of State of N. M., Davis and Goen, F. M. Danley and Mountain States Mutual Casualty Company on their claims."

Objection was made to this instruction "for the reason that here again it is implied that Danley had the right to pass under the circumstances that existed * * * it wholly ignores the obligation of Danley * * * to exercise such control over his tractor as was reasonable necessary."

Danley's testimony was that he did not attempt to pass the car but pulled out to the left side, then the right side of the road in trying to avoid a "rear-end" collision. Two officers testified that from their investigation the impact occurred on the right-hand (west) side of the highway at a time when the tractor-trailer was on its side of the road and the car was straddling the center line.

An emergency may arise where, to escape injury to oneself or others, it is necessary and proper to disregard traffic laws. If unable to avoid overtaking the car on the narrow bridge, but able to pass it with apparent safety, it would have been proper for Danley to do so in spite of a regulation in force prohibiting passing at that place.

Instruction No. 29, dealing with the doctrine of "assumption of risk" was given over objection, reading:

"The jury are instructed that the frequently referred to doctrine of 'assumption of risk' means that when a guest assents to a willful misconduct on the part of a driver of a vehicle so as to show a voluntary assumption of the risk, the guest is barred from recovering for his injuries. To constitute assent under this rule, there must

be something more than silence on the part of the guest. There must be a knowing concurrence by him in the willfulness of the conduct of the driver and a knowing acceptance of the hazard. This means that the guest, to be barred from recovery, must have knowledge at the time of the ride of the facts that make it perilous, and that he must have had sufficient experience and understanding to appreciate the dangerous character of the conduct. And it means, further, that with this knowledge and appreciation, he nevertheless lends his approval to the conduct. Reliance on this doctrine is an affirmative defense and must be proved by a preponderance of the evidence."

Appellants state that the instruction is confusing in failing to indicate which of the guests would be barred recovery. (The two adults and four children in the Seaver family were all guests in the Lafferty car.) They also insist that there was no evidence to warrant the giving of an instruction on this doctrine at all, and that in so doing the court injected a false issue which could only have served to confuse the jury.

■ The elements of the doctrine comprise knowledge and appreciation of the danger, voluntary exposure to the danger, an opportunity for the guest to elect whether or not he should expose himself to the peril. Since none of these elements are to be found in the record, the instruction was inapplicable and should not have been given. We do not, however, regard it as having prejudiced appellants. Answers to the interrogatories show clearly that the jury did not consider this issue, since it found Danley free from negligence. Other instructions told the jury that they should not deny recovery for the deaths of the children on any ground except failure of their administrator to prove negligence on the part of Danley proximately causing the accident. Moreover, this is not the kind of objectionable instruction which tends to divert the minds of the jury from the valid and material issues, so that doubt is raised as to whether it impeded a rational appraisal of the merits of the controversy. No one could have heard the testimony of the witnesses Danley and Millican and gotten any idea that the passengers in the Lafferty car had "assumed the risk" of the catastrophe which happened at almost the instant the car entered the highway. There was nothing to indicate any recklessness on behalf of the driver until the collision was imminent, if then.

■ The court gave Instruction No. 32 which reads:

"You are instructed that the presumption is that every man observes the law. The presumption in this case is that the defendants, Davis and Goen, and/or their driver, F. M. Danley, were maintaining and operating their

vehicle in accord with the laws of the State of New Mexico in such cases provided. This presumption is in itself a species of evidence and it shall prevail and control your deliberation until and unless it is overcome by other evidence."

Appellants objected for the reason that (1) the presumption is not negligence, and (2) there having been evidence to overcome the presumption, no such instruction should have been given.

However, appellants also argued that "the instruction should be made to apply equally to the driver of the Lafferty car", and the Court acceded to this request and submitted a similar instruction as to the other driver.

Appellants have the worst of this proposition, there having been no evidence of Danley's negligence except the expert testimony referred to above, but definite and positive evidence from eyewitnesses and others as to the negligence of the driver of the car. No prejudice to appellants could have resulted from the instruction complained of. Indeed, while it may be regarded as superfluous under the evidence, it cannot be said that Danley and his employers were not entitled to such an instruction.

The matters raised in Point 2 will be ruled against appellants.

■ Points 3 and 4 complaint of the Court's refusal to allow appellant Helm and appellant Seaver closing arguments to the jury on their cross-claims, and assert that, since they had the burden of proof on their respective claims, they were entitled to close the arguments as is provided by statute. Section 21–8–18 contains this language:

"Fifth. The parties may then either submit or argue the case to the jury. In the argument the party having the burden of the issue shall have the opening and closing * * *" etc.

Trial courts are ordinarily given wide discretion as to arguments of counsel respecting the line and range of discussion and method of presenting the argument. 53 Am.Jur. Trial, Sec. 462, states:

"* * * But while the right to open and close is an important one, nevertheless, such a right has been considered as merely relating to trial practice; in the absence of a showing of an abuse of discretion, an appellate court will not interfere with a trial court rule denying to a party the right to open and close the argument."

While the suit was commenced by State Highway Commission, this complaint was dismissed and the State of New Mexico was substituted as plaintiff. While the motions to dismiss were pending, appellees served their cross-claims against appellant Helm, and the court throughout the trial, with the assent of all parties, treated the

appellees Davis & Goen, and Danley as plaintiffs, and the administrators as defendants, in the order of proof. Furthermore, the amount of damages to which the State would be entitled was stipulated, to await the verdict, and the State took no part in the trial.

At the conclusion of the trial, the Court stated (in answer to inquiry as to how argument would proceed):

"Yes, for the record, the case has proceeded all along on the theory, more or less from a practical angle, that Davis & Goen, Mountain States, Mr. Danley are the plaintiffs and the other parties the defendants. I think, even though it may be objectionable to some extent, that I am going to carry that on. I don't see how we can do it otherwise. It will be left that way."

The administrators objected to this arrangement strenuously and insisted that they should have the right to close as to their respective counter-claims, but their objections were overruled. Throughout a week long trial and without objection, the case had proceeded as if the truck owners and the driver were the plaintiffs and the two administrators the defendants. This, of course, was an advantage to the administrators, putting their adversaries to the burden of proof on the issue of negligence. To have at final argument reversed this order would have been confusing and improper. We find that the court acted properly on its determination of the manner of argument, and that there was no abuse of discretion in this ruling.

Having resolved all of the points raised against the appellants, the judgments will be affirmed.

It is so ordered.

LUJAN, C. J., and SADLER, McGHEE and COMPTON, JJ., concur.