364 P.2d 1041

**Emily Juliet MONTOYA, a minor, by her father and next of friend, Elfego Montoya, and Elfego Montoya, Individually, Plaintiffs-Appellees,**

**v.**

**Isaac WINCHELL and H. E. Jones, Defendants-Appellants,**

No. 6784.

Supreme Court of New Mexico.

Aug. 24, 1961.

Rehearing Denied Oct. 9, 1961.

Noble and Carmody, JJ., dissented.

Rodey, Dickason, Sloan, Akin & Robb, Charles B. Larrabee, Albuquerque, for appellants.

Lorenzo A. Chavez, Arturo G. Ortega and Melvin L. Robins, Albuquerque, for appellees.

MOISE, Justice.

This suit arose out of a truck-pedestrian collision, and was brought on behalf of the minor pedestrian involved in the accident by her father as next friend for damages because of the injuries suffered by her, and in a second count for recovery of past and future medical and hospital expenses. The defendant, Winchell, was driver of the truck and the defendant, Jones, was his employer and owner of the truck.

It appears that on June 25, 1959, Emily was four days short of being eight years of age, having been born June 29, 1951. On June 23rd she had been left by her parents with her maternal grandmother who lives in Corrales. Her house faces on the principal thoroughfare which passes north and south through that settlement which lies some ten or fifteen miles north of Albuquerque.

[1] At about 4:00 P.M. on the day of the accident, Emily walked north on the east side of the street or highway with Betty Villanueva, a friend who was twelve years old, and Betty Jean Armijo, a cousin who was eleven years old and with whom she had been playing in her grandmother's yard. They were on their way to purchase some firecrackers at a stand which had been erected on the west side of the street near what is known as the Sandia Bar. When they came to a place where they decided to cross the street, Betty Villanueva crossed over in safety. However, Emily and Betty Jean remained on the east side waiting for a break in the stream of cars passing. It appears that Betty Villanueva, standing on the west side of the highway, or some other girl (the record is not clear), motioned at the girls on the east side not to try to cross. However, when some cars had passed traveling to the north, Emily pulled

her hand loose from the hold Betty Jean had on her and darted across the highway right in front of the truck being driven by Winchell, and when practically across the street was struck by the right front fender or bumper of the truck, knocking her to the ground and causing the injuries complained of.

Winchell, at the time of the accident, was on his way from the place where he had been working to the home of his employer. He was fifty-one years old, had more than thirty years' experience as a driver, and was wearing tri-focal glasses with which his vision was good. He had stopped his truck several hundred feet to the north of the place of the accident to repair the rubber accelerator pedal, and having accomplished this, he started to the south traveling in low gear and very slowly. The place of the accident would have been visible to him for some 500 feet to the north if the view was not obstructed by passing cars. Winchell knew the fireworks stand had been set up on the west side of the street and when he was some 70 to 100 feet north of the point of the accident he saw three girls on the west side of the street. At this time he saw one of the girls making a motion with her hands to someone on the east side of the street. He could not see anybody on the east side of the street because approaching cars were between him and whoever was being motioned to, but he knew somebody was there and that probably it was a child because he also knew children were likely to be around a fireworks stand. Accordingly, he stepped lightly on the brakes and slowed somewhat, but continued to move to the south, when suddenly upon a car passing to the north he saw a head appear from behind the passing car and immediately in front of his truck. From the instant he first saw her, Emily had time to pass to the right side of the truck whereupon she was struck and knocked to the pavement causing the injuries. Winchell estimated he did not travel over four feet from the point of impact to where the truck was completely stopped. He stated that he had not stopped before because he "thought maybe they [whoever was waiting to cross] might mind her [the girl who was motioning] and stay there [on the east side of the street]."

Three points are relied on for reversal: (1) That there is no substantial evidence of negligence on the part of Winchell; (2) that the court erred in its refusal to give defendants' requested instruction on the sudden emergency or sudden peril doctrine; and (3) that it was error for the trial court to strike the fourth defense that Elfego Montoya, Emily's father, was negligent and thus barred from recovery.

As regards the first point, we take note of two earlier decisions of this court. In Marrujo v. Martinez, 65 N.M. 166, 334 P.2d 548, we affirmed a judgment in favor of a

driver of a truck who struck and killed a seven-year-old child who suddenly darted in front of his truck, holding that a driver of a truck was required to act as a reasonably prudent person under the circumstances, and that there was substantial evidence to support the court's conclusion that the driver had so acted under the facts of that case.

We would also call attention to Ortega v. Koury, 55 N.M. 142, 227 P.2d 941, where by a three to two decision, this court reversed the trial court in its dismissal of an action brought for the death of a three-and-one-half-year-old child, when struck by a car in the street, even though there was no evidence the car was being driven fast or that the child had been seen, or as to how the accident happened. A strong dissent was occasioned by the fact that the minority did not feel that the majority were viewing the evidence in its most favorable light so as to support the judgment in accordance with a long-established rule of review.

We mention this case because it is clear that the facts there found to demand a reversal and a recovery by plaintiff were far less convincing than are those present in the instant case. There, the defendant did not see the child or know of his presence; there was no traffic or other obstruction to his view; and there was no evidence of excess speed. The court concluded there was negligence in failing to see the child under the facts present. In the instant case, it is clear that Winchell knew of the fireworks stand, knew children were likely to be in its neighborhood, saw the little girl on the west side of the road motioning to somebody on the east side not to cross, so as to cause him to think that possibly whoever was there would obey the signal and stay on that side, and his view of the situation on the east side of the street was blocked by passing cars. Under these circumstances, can we say that reasonable minds cannot differ that the driver, Winchell, was not negligent? We don't think so. The jury found him negligent and under the long established rules we cannot say that there was no substantial evidence to support the conclusion. American Insurance Company v. Foutz and Bursum, 60 N.M. 351, 291 P.2d 1081; Madsen v. Read, 58 N.M. 567, 273 P.2d 845. Compare Doyen v. Lamb, 74 S.D. 126, 49 N.W.2d 382, a case very close to the instant case on its facts, and cases cited in note to 30 A.L.R.2d 5. The first point is ruled against defendants.

Point 2 is likewise without merit. That defendants were entitled to an instruction setting forth their theory of the case where there was evidence presented to support the same cannot be controverted. Lucero v. Torres, 67 N.M. 10, 350 P.2d 1028. Defendants pleaded and attempted to prove that Winchell was not negligent because of the sudden emergency with which he was

confronted. They claim they were entitled to the instruction submitted since it had been expressly approved in Otero v. Physicians and Surgeons Ambulance Service, Inc., 65 N.M. 319, 336 P.2d 1070, 1072.

The requested instruction reads as follows:

"No. 9—When a person is suddenly placed in a position of peril, without sufficient time to consider all of the circumstances, the law does not require of him the same degree of care and caution that it requires of a person who has ample opportunity for the full exercise of his judgment and reasoning faculties. A man is not held to the exercise of the same degree of prudence, when the negligence of another has given rise to a belief of imminent danger, as would be exercised by a person of ordinary prudence under ordinary circumstances. If the driver of a motor vehicle finds himself confronted by a sudden peril, without any negligence on his part, his failure to exercise a degree of care which might, under other circumstances, be deemed negligence, will not always render him liable."

The instruction approved in Otero v. Physicians and Surgeons Ambulance Service, Inc., supra, reads as follows:

"A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to another is not expected nor required to use the same judgement and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, he does all the law requires of him, although in the light of after-events, it should appear that a different course would have been better and safer."

The variance between the instruction requested and the one approved, in one very material respect, is at once obvious. The approved instruction recites the degree of care required when faced with a sudden emergency, whereas the requested form did not explain that the driver's duty was the same as that ordinarily required in the operation of an automobile, while pointing out that the sudden emergency was only a circumstance to be considered in determining if reasonable care had been exercised. It was not error for the court to refuse a defective or improper instruction.

Hanks v. Walker, 60 N.M. 166, 288 P.2d 699. In the instant case, where the court had instructed the jury in the degree of care which the driver was required to exercise, and these instructions had not been objected to, we do not consider that it was error requiring a reversal for the court to refuse to give an instruction on sudden emergency, where no proper instruction was tendered, even though defendants would have been entitled to the same if they had tendered a correct statement of the law in this regard. Compare State of New Mexico ex rel. State Highway Commission v. Davis, 64 N.M. 399, 329 P.2d 422; Lujan v. McCuistion, 55 N.M. 275, 232 P.2d 478; Turrietta v. Wyche, 54 N.M. 5, 212 P.2d 1041, 15 A.L.R.2d 407.

Point 3 raises the question of whether the evidence was such as to entitle defendants to have submitted to the jury the issue of whether or not the father was negligent in leaving his eight-year-old daughter with her grandmother so as to deny him a recovery for the medical and hospital bills covered by the second count of the complaint. The court struck this defense at the close of all the testimony. He advised counsel that if they had any instructions covering their position he would consider the same; however, no requests were submitted.

We proceed to an examination of the trial court's action in striking the defense.

So far as we are aware, this court has never had occasion to pass on any questions arising out of such a defense.

The parties agree that any negligence of which the father might be guilty should not be imputed to his minor daughter so as to affect her claim under count 1. This is in accord with the rule in the majority of jurisdictions. See note in 110 Am.St.Rep. 283, 284, and in 15 A.L.R. 414. However, defendants claim the father's negligence in this regard should bar him from recovery under count 2.

In 51 A.L.R. 209 there is a note on the question of whether the presence of a child non sui juris in the street is negligence or evidence of negligence. As can be easily seen from the cases there cited, some hold that under certain facts parents would be guilty of negligence as a matter of law. Other cases hold that under facts being considered the parents could not be held to be negligent. In between are those cases where it was determined that a question of fact was presented for consideration of the jury.

In the instant case we are not prepared to state that the court erred in determining that the father was not negligent as a matter of law. The uncontradicted evidence is to the effect that Emily had been left with her grandmother three days before the accident. She had been repeatedly

cautioned by her parents about going into the streets, although she had not been warned particularly on the day of the accident. She was not unattended when on the street but was in the company of a twelve-year-old companion and an eleven-year-old cousin. We are disposed to agree with the trial judge that negligence of the father could not be found in the conduct disclosed by the proof. We feel that he acted as do a majority of parents when he left his child with the grandmother, after repeatedly warning her about the dangers in the streets. In doing so he acted no differently than the ordinary prudent father. In addition, for the child to be permitted on the streets with companions eleven and twelve years old is not negligence. Raid v. City Coach Company, Inc., 215 N.C. 469, 2 S.E. 2d 578, 123 A.L.R. 140, together with cases in note at 147, et seq. It is ordinary and reasonable conduct and constitutes due care under the circumstances of this case. Archuleta v. Jacobs, 43 N.M. 425, 94 P.2d 706. With this conclusion, we do not feel that reasonable minds will differ and accordingly the court properly refused to submit the question of the father's negligence to the jury. Caldwell v. Johnsen, 63 N.M. 179, 315 P.2d 524; American Insurance Company v. Foutz and Bursum, supra.

Finding no error, the judgment appealed from is affirmed.

It is so ordered.

COMPTON, C. J., and CHAVEZ, J., concur.

CARMODY and NOBLE, JJ., dissenting.

NOBLE, Justice (dissenting).

The majority, in effect, hold that every case involving an accident to a pedestrian child by an automobile is one for the jury. By Marrujo v. Martinez, 65 N.M. 166, 334 P.2d 548, we are committed to the rule that the driver of an automobile is not an insurer of the safety of children. There, the rule of Chapple v. Sellers, 365 Pa. 503, 76 A.2d 172, 174, 30 A.L.R.2d 1, in the following language, was approved:

"But an operator of an automobile is not an insurer of the safety of children. He is not responsible, for instance, if, with his car under proper control, a child deliberately steps in front of [his] car."

It is difficult to perceive how the defendant, in the instant case, could have had his car more under control nor what he could have done short of stopping his car entirely in the middle of the street, when he became aware of children at the side of the street, and remaining stopped so long as children were in the neighborhood. In Marrujo, the annotation at 30 A.L.R.2d 35, et seq., was referred to and the decisions said to be in hopeless conflict; noting that many jurisdictions apparently hold it to

be the duty of the driver to anticipate childish action such as running across the street without warning and that many others hold to the contrary. This court then aligned itself with those jurisdictions holding the driver only to that degree of care which a reasonably prudent person should exercise under the circumstances.

There has not been shown, in this case, any act which the driver did or failed to do which a reasonably prudent person would have or would not have done. The driver was preceeding in low gear with his foot on the brake and was slowing the truck until he was proceeding at approximately four miles per hour. It would certainly appear that the defendant here was well within the rule of Marrujo in having his car under control, and it cannot be doubted that the child suddenly darted out from behind an approaching car directly in the path of defendant's truck.

Decisions are cited in the A.L.R. Annotation, above referred to, holding the obligation of the driver to that of being able to avoid striking a child at all events. To my mind, that is the degree of care required by the majority and is, I think, contrary to the holding in Marrujo v. Martinez, supra. It seems clear to me that there may be facts upon which the trial court, applying proper rules, should upon motion determine as a matter of law that the driver of a vehicle is not negligent and direct a verdict. On appeal, the appellate court in determining whether there is substantial evidence to support a verdict applies the same rules as does a trial court in passing upon such a motion. That responsibility of the court is denied by the majority. The question here, as it would be in the trial court upon a motion for directed verdict, is whether there is substantial evidence to support a verdict in which negligence of the driver is implicit.

Ortega v. Koury, 55 N.M. 142, 227 P.2d 941, said by the majority to have been determined on facts far less convincing than those in the instant case, seems to be wholly inapplicable under the present facts. That decision was predicated upon the fact that the driver, having an unobscured view, was negligent in not seeing the child in time to have avoided the accident. Negligent failure to see the child in time to take action to avoid the injury is not an issue in this case. Here, the driver's view of the child was obstructed by approaching cars. His first opportunity to see her was when she suddenly darted into the street from behind the approaching car. The driver, realizing there might be children at the side of the street, was proceeding very slowly, in low gear, and with his foot on the brake. Even so, when he was able to see the child suddenly appear, he was unable to stop in time to avoid striking her. I am unable to perceive any act of negligence by the driver. Furthermore, there is nothing in the record to indicate to the driver that the

child would move from her position of safety until the way was clear. I am unable to find substantial evidence to support the finding of negligence and, therefore, dissent.

CARMODY, Justice (dissenting).

I join in the dissent of Justice NOBLE, and would add to it that, although I approve of the doctrine that a motorist must exercise a higher degree of care where children are concerned, I cannot subscribe to the apparent rule adopted by the majority that the mere happening of an accident constitutes prima facie evidence of negligence on the part of the driver. The defendant was traveling so slowly as to be almost a menace to other motoring public, yet the majority is able to find substantial evidence of negligence toward this child, apparently because of the driver's failure to bring his truck to a complete standstill—such was his only other alternative. To me, the evidence is plain that the defendant was exercising the degree of care which should be expected of a reasonably prudent person, and, in my opinion, the trial court was in error in allowing the case to go to the jury.