862 P.2d 1212

**Julie DUNLEAVY, Plaintiff–Respondent,**

v.

**Stephen A. MILLER, Defendant–Petitioner.**

No. 20642.

Supreme Court of New Mexico.

Oct. 22, 1993.

Felker, Ish, Hatcher, Ritchie, Sullivan & Geer, P.A., Scott P. Hatcher, Mariana G. Geer, Santa Fe, for defendant-petitioner.

Carpenter & Chavez, Ltd., William H. Carpenter, David J. Stout, Albuquerque, for plaintiff-respondent.

## OPINION

MONTGOMERY, Justice.

We granted certiorari to review the defendant-petitioner's contention that New Mexico should withdraw adherence to the "sudden emergency" doctrine in negligence cases and discontinue use of the corresponding Uniform Jury Instruction on sudden emergency, SCRA 1986, 13–1617 (Repl. Pamp.1991) (UJI Civil 1617). In addition, the case raises the question whether a plaintiff who recovers a judgment against the defendant but fails to accept an offer of judgment pursuant to SCRA 1986, 1–068 (Repl.Pamp.1992) (Rule 68) may be deemed the "prevailing party" for purposes of awarding costs under SCRA 1986, 1–054(E) (Repl.Pamp.1992) (Rule 54(E)).

■ We hold that UJI Civil 1617 is inconsistent with the philosophy of our Uniform Jury Instructions; that the sudden emergency doctrine underlying the instruction is unnecessary, potentially confusing to the jury, and conducive to overemphasizing one party's theory of the case; and that, accordingly, UJI Civil 1617 should no longer be used in instructing the jury in a negligence case.

■ As to the tension between Rules 54(E) and 68, we hold that a plaintiff who recovers a judgment is the prevailing party and entitled to recover his or her costs, at least as incurred before the defendant makes a Rule 68 offer of judgment. If the plaintiff's recovery exceeds the amount of the offer, as it may have in this case, then the plaintiff is entitled to an award of *all*

of his or her taxable costs, undiminished by any liability to pay the defendant's postoffer costs. On the other hand, if the plaintiff recovers less than the amount offered, then the plaintiff is entitled to his or her taxable costs incurred before the offer, but not those incurred afterwards, and is liable to the defendant for the defendant's taxable postoffer costs.

### I.

In September 1985, plaintiff-respondent Julie Dunleavy and defendant-petitioner Steven Miller collided with one another at the intersection of Pacheco Street and St. Michael's Drive in Santa Fe, New Mexico. Miller had been driving east on St. Michael's Drive before attempting to turn left onto Pacheco Street. Miller's turn placed his car directly in the path of Dunleavy's car, which at that time was proceeding west in the middle lane of St. Michael's Drive. According to the testimony of police officers who attempted to reconstruct the accident, Dunleavy applied her brakes shortly before the collision; her vehicle skidded and veered to the right before striking Miller's vehicle. There was no evidence that Miller braked or took any evasive action to avoid the collision. Miller received a traffic citation for failure to yield the right of way.

Dunleavy filed a complaint for personal injuries, alleging that she had suffered bruises and abrasions throughout her body and a serious closed-head injury as a result of Miller's negligence. The case was tried to a jury in late August and early September 1989. Dunleavy requested the trial court to instruct the jury in accordance with UJI Civil 1617. The trial court declined to give the requested instruction because Dunleavy, who recalled nothing about the circumstances of the accident, did not testify about her reaction to Miller's car turning in front of her. The court stated that Dunleavy's failure to testify concerning the situation that confronted her before the collision would require the jury to speculate about whether an emergency existed.

At the end of the trial, the jury returned a verdict assessing Dunleavy's damages at $91,267.20. The jury apportioned negligence 76% to Miller and 24% to Dunleavy, so that Dunleavy's net award was reduced to $69,363.15.

Several months before the trial, Miller served an offer of judgment on Dunleavy, pursuant to Rule 68, in the amount of $70,000, "costs inclusive." Dunleavy did not accept the offer. After trial, the trial court found Miller entitled to recover his postoffer costs because the jury's award after adjustment for Dunleavy's comparative negligence did not exceed the offer of judgment. The trial court, over Dunleavy's objection, awarded Miller all costs incurred after he made his offer, as listed in his bill of costs. The court thus further reduced Dunleavy's net award by $14,-737.93.

Dunleavy requested an award of her costs under Rule 54(E), as the prevailing party in the action. The trial court denied Dunleavy's request for costs, ruling that she was not the prevailing party because the jury's award after reduction for comparative fault was less than the offer of judgment. The court then entered judgment for Dunleavy in the sum of $54,-625.22.

Dunleavy appealed from the judgment to the Court of Appeals in October 1989 and in the following month appealed from the trial court's order denying her objections to Miller's bill of costs. The Court of Appeals consolidated the two appeals. On appeal, Dunleavy argued that the trial court had made three errors: (1) It failed to give a jury instruction on sudden emergency; (2) it ruled that Dunleavy could not recover costs from Miller because she was not the prevailing party; and (3) it awarded Miller all of his requested postoffer costs despite the fact that many of the costs were not taxable under New Mexico law. In May 1992 the Court of Appeals issued its opinion, holding that there was sufficient evidence to support Dunleavy's contention that she was entitled to an instruction on sudden emergency, *Dunleavy v. Miller*, 116 N.M. 365, 862 P.2d 1224 (Ct.App.1992). The Court of Appeals therefore reversed the judgment and remanded the case to the trial court for a new trial on the issues of liability and damages.

The Court of Appeals also addressed the trial court's award of costs because the issue was likely to recur on remand. The Court held that Dunleavy was the prevailing party under Rule 54(E); that "where the judgment finally obtained is for less than the offer of judgment, the offeree is entitled to recover his pre-offer costs but is not entitled to post-offer costs and must also pay the offeror's post-offer costs[;]" and that the trial court had abused its discretion in allowing certain, relatively minor, sums to be assessed as costs against Dunleavy.

Miller filed a petition for a writ of certiorari, requesting that we consider whether a jury instruction on sudden emergency should continue to be given in New Mexico, whether under the facts the instruction should have been given in this case, and whether Dunleavy was the prevailing party entitled to recover costs under Rule 54(E). We affirm the Court of Appeals' rulings in part and reverse in part; and we remand the case to the trial court with instructions to reinstate its judgment in Dunleavy's favor, except that portion of the judgment offsetting Dunleavy's recovery by Miller's postoffer costs, and otherwise to proceed in accordance with the discussion later in this opinion.

## II.

We first discuss Miller's contention that we should abolish use of a jury instruction on the sudden emergency doctrine, as contained in UJI Civil 1617. That uniform instruction reads as follows:

A person who, without negligence on [his] [her] part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence or the appearance of an imminent danger to [himself] [herself] or another, is not expected nor required to use the same judgment and

prudence that is required of [him] [her] in the exercise of ordinary care in calmer and more deliberate moments.

[His] [Her] duty is to exercise only the care that a reasonably prudent person would exercise in the same situation.

If, at that moment, [he] [she] does what appears to [him] [her] to be the best thing to do and if [his] [her] choice and manner of action are the same as might have been followed by any reasonably prudent person under the same conditions, then [he] [she] has done all that the law requires of [him] [her], even though, in the light of after events, it might appear that a different course would have been better and safer.

Use of the sudden emergency doctrine goes back to at least the early part of the nineteenth century, *see Jones v. Boyce*, 171 Eng.Rep. 540, 541 (K.B.1816), and was discussed with approval by the United States Supreme Court in 1839, *see Stokes v. Saltonstall*, 38 U.S. (13 Pet.) 181, 190, 10 L.Ed. 115 (1839). *See generally* Virgil G. Gillespie, Comment, *The Sudden Emergency Doctrine*, 36 Miss.L.J. 392, 393–95 (1965) (discussing history of sudden emergency doctrine). This Court first applied the doctrine in *Melkusch v. Victor American Fuel Co.*, 21 N.M. 396, 410–11, 155 P. 727, 731–32 (1916); and in a series of cases over the ensuing years we have given our continuing approval to jury instructions on sudden emergency under appropriate circumstances.[1] Although there has thus been a long history behind the sudden emergency doctrine, this "does not in itself justify its continuation if change therein or abandonment thereof are demanded in order to accomplish justice." *Syroid v. Albuquerque Gravel Prods. Co.*, 86 N.M. 235, 237, 522 P.2d 570, 572 (1974).

The sudden emergency doctrine recognizes that when a person is confronted with a sudden or unexpected event calling for immediate action, that person does not have the opportunity to weigh the safety of alternative courses of action and thus cannot be expected to act with the same accuracy of judgment as one who has had time to reflect on the situation. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 33, at 196 (5th ed. 1984) [hereinafter *Prosser*]. The doctrine appears to have been devised originally to ameliorate the sometimes harsh results of contributory negligence, under which the slightest amount of questionable conduct on the part of a plaintiff could prevent his or her recovery of damages resulting from another's negligence. *Gillespie, supra*, at 394; *see also Syroid*, 86 N.M. at 237, 522 P.2d at 572 (noting that sudden emergency is a common law doctrine developed to temper harsh application of contributory negligence). Over the years, however, the doctrine has become recognized as available to a defendant to avoid or mitigate a claim of the defendant's own negligence, in addition to its availability to a plaintiff to counter allegations of his or her negligence. *Compare McNeely v. Henry*, 100 N.M. 794, 799–800, 676 P.2d 1359, 1364–65 (Ct.App. 1984) (holding that trial court erred in not charging jury on sudden emergency at defendant's request) *with Martinez v. Schmick*, 90 N.M. 529, 532, 565 P.2d 1046, 1049 (Ct.App.) (holding that trial court erred in not charging jury on sudden emergency at plaintiff's request), *cert. denied*, 90 N.M. 637, 567 P.2d 486 (1977). The doctrine remains viable in many jurisdic-

---

1. This Court has approved application of the sudden emergency doctrine in the following cases: *Romero v. State*, 112 N.M. 332, 333, 815 P.2d 628, 629 (1991); *Stehwein v. Olcott*, 78 N.M. 95, 96, 428 P.2d 634, 635–36 (1967); *Gould v. Brown Constr. Co.*, 75 N.M. 113, 116, 401 P.2d 100, 103 (1965); *Otero v. Physicians & Surgeons Ambulance Serv., Inc.*, 65 N.M. 319, 322–23, 336 P.2d 1070, 1072 (1959); *State ex rel. State Highway Comm'n v. Davis*, 64 N.M. 399, 405, 329 P.2d 422, 426 (1958); *Scofield v. J.W. Jones Constr. Co.*, 64 N.M. 319, 327, 328 P.2d 389, 394 (1958); *Thompson v. Anderman*, 59 N.M. 400, 418, 285 P.2d 507, 518 (1955); *Madsen v. Read*, 58 N.M. 567, 574–75, 273 P.2d 845, 850 (1954); *Frei v. Brownlee*, 56 N.M. 677, 685, 248 P.2d 671, 676 (1952); *Seele v. Purcell*, 45 N.M. 176, 179–82, 113 P.2d 320, 322–23 (1941); *Crocker v. Johnston*, 43 N.M. 469, 484, 95 P.2d 214, 223–24 (1939); *Vigil v. Atchison, T. & S.F. Ry. Co.*, 28 N.M. 581, 586–87, 215 P. 971, 973 (1923).

tions that have adopted comparative negligence and abandoned the theory of contributory negligence. *See, e.g., Young v. Clark,* 814 P.2d 364, 368 (Colo.1991) (en banc; 3–2 decision) (sudden emergency instruction may properly be given despite jurisdiction's change from contributory to comparative negligence).

A party seeking to have the jury charged on sudden emergency is contending that there was no breach of the duty owed the opposing party—i.e., that he or she was not negligent (or at least not as negligent as claimed by the opposing party). The legal duty of every person in New Mexico is "to exercise ordinary care for the safety of the person and the property of others." SCRA 1986, 13–1604 (Repl.Pamp.1991). The definition of "ordinary care" is set out in SCRA 1986, 13–1603 (Repl.Pamp.1991) (UJI Civil 1603):

> "Ordinary care" is that care which a reasonably prudent person would use in the conduct of the person's own affairs. What constitutes "ordinary care" varies with the nature of what is being done.

> As the risk of danger that should reasonably be foreseen increases, the amount of care required also increases. *In deciding whether ordinary care has been used, the conduct in question must be considered in the light of all the surrounding circumstances.* [Emphasis added.]

The duty owed—the exercise of ordinary care—thus remains constant, "while the conduct necessary to fulfill it varies with the circumstances." *Bober v. New Mexico State Fair,* 111 N.M. 644, 649, 808 P.2d 614, 619 (1991) (quoting *Coburn v. City of Tucson,* 143 Ariz. 50, 691 P.2d 1078, 1080 (1984) (en banc)). The sudden emergency doctrine is merely an application of the standard of ordinary care to a situation in which a reasonable person cannot be expected to act with forethought or deliberation. *Martinez,* 90 N.M. at 531, 565 P.2d at 1048. "The conduct required is still that of a reasonable person under the circumstances, as they would appear to one who was using proper care, and the emergency is to be considered only as one of the circumstances." *Prosser, supra,* § 33, at 196–97; *see also* 3 Fowler V. Harper et al., *The Law of Torts* § 16.11, at 487 (2d ed. 1986) ("If a person is caught in a sudden emergency, that is part of the circumstances in the light of which the person's conduct at that time is to be judged.").

Accordingly, if an actor under the stress of an emergency chooses a course of action that a reasonably prudent person faced with the same emergency would have taken, then that course is not necessarily negligent even if an alternative course would have prevented injury. 3 Harper, *supra,* § 16.11, at 488. Justice Holmes, while Chief Judge of the Massachusetts Supreme Judicial Court, stated the principle succinctly when he said that an actor's choice "may be mistaken and yet prudent." *Kane v. Worcester Consol. St. Ry.,* 182 Mass. 201, 65 N.E. 54, 54 (1902). The standard by which the actor's conduct is to be measured remains that of the degree of care that would be exercised by an ordinarily prudent person in order to avoid an unreasonable risk of harm in light of all the surrounding circumstances. The sudden emergency instruction merely directs the jury's attention to one of the circumstances, the emergency, to be considered in evaluating the reasonableness of the actor's behavior.

Miller urges this Court to abandon use of a jury instruction on sudden emergency, despite its lengthy jurisprudential history. Miller argues that the instruction is merely a restatement of the reasonably prudent person standard of care that unduly emphasizes the "under the circumstances" portion of the standard, thereby potentially confusing the jury in its efforts to apply the proper standard of care to the conduct of the actor in question. We agree, for the reasons already given and for the additional reasons set out in the following section.

### III.

New Mexico has adopted uniform jury instructions for use in civil cases in charging the jury on the applicable issues and law. SCRA 1986, 13–101 to –2221 (Repl.

Pamp.1991 & Cum.Supp.1993). The Uniform Jury Instructions incorporate a style and philosophy of jury charging designed to make instructions accurate, unslanted, and understandable. SCRA 1986, "The Concept of Jury Instructions," Jud.Pamp. 13, at 3 (Repl.Pamp.1991). Many "pattern" instructions used prior to adoption of the Uniform Jury Instructions have been abandoned because of their inconsistency with this style and philosophy. *Id.* "It is for the advocate in argument to apply the law to the facts in evidence.... The philosophy behind these uniform jury instructions includes ... a dislike of instructions which single out a particular item of evidence for comment, it being felt that this is a function of counsel in argument and not a function of the court...." *Id.* In order to effectuate this philosophy, this Court adopted SCRA 1986, 1–051(A) (Repl.Pamp. 1992) (Rule 51(A)). Rule 51(A) provides that "[t]he trial judge shall instruct the jury in the language of the Uniform Jury Instructions on the applicable rules of law and leave to counsel the application of such rules to the facts according to their respective contentions." The approach of our Uniform Jury Instructions is thus to set forth the law simply and concisely, without elaboration or further explanation by the trial judge. *See also* Rule 1–051(F) (instructions shall be brief, impartial, and free from hypothesized fact).[2]

Accordingly, the Uniform Jury Instructions direct that "[u]nnecessary instructions must be deleted" and "that certain instructions will *not* be given." SCRA 1986, "Introduction," Jud.Pamp. 13, ch. 21 (Repl.Pamp.1991). In some cases, instructions are remnants of obsolete historical concepts and traditions and are not needed for the proper enlightenment and guidance of the jury to a true verdict. *Id.* Among the instructions now considered unnecessary are those used to ease the sometimes harsh results of contributory negligence. Long-established principles of law, developed in connection with contributory negligence, that have been abolished by this Court include instructions for unavoidable accident, *Alexander v. Delgado*, 84 N.M. 717, 719, 507 P.2d 778, 780 (1973), *see also* SCRA 1986, 13–2120 (directing that no instruction be given); last clear chance, *Scott v. Rizzo*, 96 N.M. 682, 687, 634 P.2d 1234, 1239 (1981), *see also* SCRA 1986, 13–2124 (directing that no instruction be given); and open and obvious danger, *Klopp v. Wackenhut Corp.*, 113 N.M. 153, 159, 824 P.2d 293, 299 (1992).

In 1981, in *Scott v. Rizzo*, this Court adopted comparative negligence and abandoned the doctrine of contributory negligence. 96 N.M. at 690, 634 P.2d at 1242. We held in *Scott* that "rules designed to ameliorate the harshness of the contributory negligence rule are no longer needed," and we therefore abolished the last clear chance rule and the distinction between ordinary and gross negligence. *Id.* at 687, 634 P.2d at 1239. More recently, in *Klopp v. Wackenhut*, we abolished the open and obvious danger rule because the instruction is inappropriate under principles of comparative negligence. 113 N.M. at 159, 824 P.2d at 299. As already noted, the sudden emergency doctrine, though a rule designed to ameliorate the harshness of the contributory negligence rule, has evolved so as to be applicable to the actions of defendants as well as plaintiffs and thus is not as clearly incompatible with comparative negligence as the rules discarded in *Scott* and *Klopp*. *But see Knapp v. Stanford*, 392 So.2d 196, 198 (Miss.1980) (stating that sudden emergency doctrine tends to confuse the principle of comparative negligence).

We do find significant parallels, however, between the case before us and *Alexander v. Delgado*. In *Alexander*, we were presented with the question whether the unavoidable accident rule, calling for a jury instruction when the jury could conclude that the accident had occurred without having been proximately caused by the negligence of either party, should be abolished.

---

**2.** In a similar vein, our Rules of Evidence, unlike the Federal Rules of Evidence, prohibit the trial judge from commenting to the jury upon the evidence or the credibility of the witnesses. SCRA 1986, 11–107.

84 N.M. at 717–18, 507 P.2d at 778–79. We held that

> the defense in question is nothing more than a denial by the defendant of negligence, or a contention that his negligence, if any, was not the proximate cause. Since the ordinary instructions on negligence and proximate cause sufficiently show that the plaintiff must sustain his burden of proof on these issues in order to recover, the instruction on unavoidable accident serves no useful purpose.

> It is merely another way of saying that the defendant is not negligent. The defendant is not entitled to have this defense over-emphasized. The instruction is not only unnecessary but is confusing.

*Id.* at 719, 507 P.2d at 780. Similarly, we find that the instruction on sudden emergency is unnecessary and potentially confusing and serves to overemphasize one portion of the case. *See State ex rel. State Highway Comm'n v. Atchison, T. & S. F. Ry.*, 76 N.M. 587, 590, 417 P.2d 68, 70 (1966) ("Instructions which are repetitious or which unduly emphasize certain portions of the case should not be given.").

The instruction is unnecessary because the standard of care is adequately stated in UJI Civil 1603—that is, the care a reasonably prudent person would use in the conduct of the person's own affairs, considered in light of all the surrounding circumstances. If one of the circumstances affecting the actor's conduct is the presence of an emergency limiting time for reflection on the wisest course of action, then that fact can and should be brought to the jury's attention by counsel. It is not necessary for the judge to charge the jury a second time that the law requires it to consider the circumstances surrounding the actor's conduct in determining whether the actor breached his or her duty to another person.

The overemphasis of the circumstances surrounding the actor's conduct has a tendency to confuse the jury by implying that a different standard of care applies in a sudden emergency.

A separate instruction for sudden emergencies suggests to the jury that sudden emergencies give rise to different standards of conduct; otherwise there would be no need for a separate instruction. The instruction can readily be understood by jurors to connote that a sudden emergency excuses ordinary negligence instead of simply being one of the circumstances to be considered in determining whether the person confronted with an emergency acted as a reasonably careful person would.

*Young*, 814 P.2d at 371 (Lohr, J., dissenting) (footnote omitted).

Indeed, even our Court of Appeals in its opinion below mistakenly concluded that "the standard of care to be applied in an emergency situation differs from the usual standard of care." The sudden emergency doctrine does not alter the standard of care to which an actor must adhere in an emergency situation, but rather emphasizes the *amount* of care to be exercised—as already covered by the definition of ordinary care in UJI Civil 1603. How can we expect the average juror to understand and correctly apply this instruction when it is confusing even to the judiciary of this state? The confusing nature of the sudden emergency instruction makes its abolition appropriate and necessary. *See Embrey v. Galentin*, 76 N.M. 719, 721, 418 P.2d 62, 64 (1966) ("No statement should be included in any instruction which is likely to confuse or mislead any members of the jury.") (quoting *Gerrard v. Harvey & Newman Drilling Co.*, 59 N.M. 262, 267, 282 P.2d 1105, 1109 (1955)).

Our holding today conforms to the approach taken by a growing number of jurisdictions. *See* Jeffrey F. Ghent, Annotation, *Modern Status of Sudden Emergency Doctrine*, 10 A.L.R.5th 680 (1993) (collecting cases abolishing, restricting, or discouraging use of sudden emergency doctrine). The jury instructions in Florida, Illinois, Kansas, and Missouri either prohibit or discourage using an instruction on sudden emergency. *See Prosser, supra*, § 33, at 197. Nebraska has accomplished the same thing through one of its pattern

Jury instructions. *See McClymont v. Morgan*, 238 Neb. 390, 470 N.W.2d 768, 771 (1991). The Hawaii Supreme Court, in recommending that discussion of circumstances purportedly constituting an emergency be limited to argument by counsel, found that charging the jury on the sudden emergency doctrine "could easily have caused the jury to believe that an emergency situation invokes a standard of care different from that required in other situations. At the least, it focused undue attention on the subordinate issue and could only have been confusing." *DiCenzo v. Izawa*, 68 Haw. 528, 723 P.2d 171, 180 (1986). *See also Simonson v. White*, 220 Mont. 14, 713 P.2d 983, 989 (1986) ("The instruction adds nothing to the law of negligence and serves only to leave an impression in the minds of the jurors that a driver is somehow excused from the ordinary standard of care because an emergency existed."); *Knapp v. Stanford*, 392 So.2d at 198 (stating that the doctrine has "the tendency to elevate its principles above what is required to be proven in a negligence action. Even the wording of a well-drawn instruction intimates that ordinary rules of negligence do not apply to the circumstances constituting the claimed 'sudden emergency.' ").

In this case the jury was charged with the instruction on the standard of ordinary care, UJI Civil 1603. This instruction fairly and accurately presented the law to the jury. Accordingly, we reverse the Court of Appeals and reinstate the verdict of the jury and the judgment of the trial court, subject to the following discussion on issues relating to costs.

## IV.

As previously stated, the Court of Appeals held that Dunleavy, as the party who won the lawsuit, was the prevailing party under Rule 54(E). The Court also held, more generally, that when a plaintiff, as prevailing party, has refused a defendant's offer of judgment greater than the jury's award, the plaintiff is entitled to recover preoffer costs, but under Rule 68 is not entitled to postoffer costs and must also pay the offeror's (the defendant's) postoffer costs. The Court then reviewed Miller's cost bill, which included only costs incurred after he made his offer of judgment, and found that, because the only costs recoverable after trial are those authorized by statute or by rule of court, the district court had abused its discretion in awarding Miller's costs for a witness fee when the witness was not identified in the cost bill and for the costs of a taxi and parking associated with a deposition.

We agree with the portion of the Court of Appeals' opinion harmonizing Rule 54(E) and Rule 68. To reiterate Judge Apodaca's reasoning for the Court, the prevailing party is the party who wins the lawsuit—that is, a plaintiff who recovers a judgment or a defendant who avoids an adverse judgment. *See South v. Lucero*, 92 N.M. 798, 804, 595 P.2d 768, 774 (Ct.App.), *cert. denied*, 92 N.M. 675, 593 P.2d 1078 (1979). Having recovered a judgment, Dunleavy was the prevailing party and entitled to an award of costs under Rule 54(E).[3]

Rule 68, however, limits recovery of costs by the prevailing party under certain circumstances.[4] Those circumstances arise

---

**3.** Rule 54(E) provides in pertinent part: "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as a matter of course to the prevailing party unless the court otherwise directs...." The rule uses the phrase "as a matter of course," but also permits the court to "otherwise direct," presumably in the exercise of its sound discretion. *But see Mascarenas v. Jaramillo*, 111 N.M. 410, 415, 806 P.2d 59, 64 (1991) (holding that the prevailing party in a civil action is entitled to an award of costs as a matter of course under Rule 54(E)).

**4.** In pertinent part, Rule 68 (first paragraph) reads: "At any time more than ten (10) days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued.... An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer."

when an offer of judgment has been made and the judgment finally obtained by the offeree is not more favorable than the offer. Should the offer of judgment exceed the judgment awarded, "the offeree must pay the costs incurred after the making of the offer." This rule controls the allocation of costs incurred *after* the settlement offer is made and rejected; the prevailing party remains entitled to recover his or her preoffer costs regardless of the effect of Rule 68 on assessment of postoffer costs.

There are three possible outcomes respecting allocation of costs when a plaintiff has refused a defendant's settlement offer: (1) When a plaintiff's award (judgment) exceeds the offer of judgment, the plaintiff is entitled as the prevailing party to recover all costs, preoffer and postoffer, and the defendant is not entitled to recover any costs; (2) when the plaintiff does not receive an award, the defendant is the prevailing party and is entitled to recover all costs incurred in defending the action, both preoffer and postoffer; and (3) when the plaintiff receives a judgment that is less than the offer of judgment, he or she "must pay the costs incurred after the making of the offer"—that is, the plaintiff must pay his or her own postoffer costs as well as the defendant's postoffer costs. As the prevailing party, however, the plaintiff remains entitled to recover all (properly taxable) preoffer costs.

In this case, Miller made an offer of judgment for $70,000 including costs. Dunleavy refused the offer. After subtracting from Dunleavy's total damages of $91,267.30 the amount attributable to her own negligence, $21,904.15 (24%), the jury returned a verdict in her favor of $69,-363.15. The trial court found that the offer of judgment exceeded this award and assessed Miller's postoffer costs against Dunleavy. Dunleavy argues that the trial court should have added her preoffer costs to the award before comparing the total to Miller's offer of judgment. The Court of Appeals declined to consider this argument because it found that (1) the issue was not raised in the trial court and thus was not preserved for appellate review and (2) Dun-

leavy did not make her cost bill part of the record, thus precluding a ruling on the merits of her argument.

We disagree with the Court of Appeals' ruling that Dunleavy's preoffer costs should not be considered in computing the amount of the "judgment finally obtained by the offeree" for purposes of applying Rule 68. First, we believe that Dunleavy's objection to the trial court's entry of judgment and request to submit her own bill of costs preserved the question whether the court properly assessed costs against the parties. Second, we note that the trial court refused to accept Dunleavy's cost bill at the presentment of judgment, apparently because it had ruled that Dunleavy would not recover any of her costs. Miller had filed objections to Dunleavy's cost bill, contesting many of the charges contained therein. Since the trial court refused to accept the cost bill, it never ruled on Miller's objections. As the case comes to us, however, we do not believe we are precluded from ruling, as a matter of law, that preoffer costs should be added to the damage award in applying Rule 68 under the circumstances of this case.

■ We hold that Dunleavy's preoffer costs should have been added to her damage award to determine the amount of "the judgment finally obtained by the referee" under Rule 68, since the offer of judgment included all costs accrued to that point. As the Alaska Supreme Court has noted: "If, as in the present case, the offer of judgment specifically includes costs ... then costs accrued up to the date of the offer must also be added to the amount awarded by the jury if the two figures are to be compared meaningfully." *Farnsworth v. Steiner*, 601 P.2d 266, 269 n. 4 (Alaska 1979).

■ A valid Rule 68 offer of judgment must compensate the plaintiff for all costs accrued through the making of the offer. *See Marek v. Chesny*, 473 U.S. 1, 6, 105 S.Ct. 3012, 3015, 87 L.Ed.2d 1 (1984) (discussing assessment of costs under Fed. R.Civ.P. 68, identical to New Mexico's Rule 68). The costs may be either included in

the offer, as in this case, or determined in addition to the settlement for damages.

This point may be illuminated by comparing the situation in this case with the situation that would have resulted had Miller made an offer of judgment in the form contemplated by Rule 68—that is, for a specified sum of money ($70,000) "with costs then accrued." In that situation, the trial court would have been correct in comparing the amount offered ($70,000) with the amount of the verdict ($69,363.15) because, by the express terms of the offer, Dunleavy's costs would have been *added* to the amount of the offer, rather than (as was the case here) *included* in that amount. To determine whether the last sentence of the first paragraph of Rule 68 (as quoted *supra* note 5) would apply in this hypothesized situation, it would make no sense to add the offeree's costs to the amount of the verdict before comparing the amount offered with the amount recovered, because the offer contemplated that costs would be added *after* the comparison. In the case at hand, however, as the Alaska court stated, a meaningful comparison can be made only by adding the offeree's preoffer costs to the jury's damage award.

We therefore remand this case to the trial court for evaluation of Dunleavy's cost bill. If the court finds that the sum of Dunleavy's taxable preoffer costs and jury-determined damage award exceeds Miller's offer of judgment, then Dunleavy is entitled to recover all of her taxable costs, both preoffer and postoffer, and Miller can recover none of his costs. However, if the court finds that Dunleavy's recovery, including her taxable preoffer costs, is less than the offer of judgment (which includes costs but, we hold, only *taxable* costs), then Dunleavy is entitled to recover her preoffer costs but not her postoffer costs, and she is liable for Miller's postoffer costs.

## V.

In the concluding portion of its opinion below, the Court of Appeals discussed Dunleavy's objections to specific costs awarded to Miller by the trial court. The Court of Appeals held that the trial court had abused its discretion by allowing Miller to recover the costs of a taxi and parking associated with a deposition and of a witness fee when the witness was not identified in Miller's cost bill, but had properly allowed Miller to recover all other costs claimed. This result may be correct—we do not rule on the point—but we disagree in part with the Court of Appeals' rationale. If the trial court determines on remand that Miller is entitled to recover his postoffer costs, then Dunleavy should be assessed all costs claimed in Miller's bill of costs except any determined to be nontaxable in accordance with the following guidelines.

The Court of Appeals correctly held that "a recovery of costs under Rule 68 should be evaluated in the same manner as a recovery of costs by the prevailing party under Rule 54." The court went on, however, to state that costs may only be recovered when authorized by statute or by rule of court as authorized by statute. We take issue with this statement insofar as it may be interpreted as permitting recovery only of *specific* costs authorized by statute or rule of court.

■ It is true that the trial court must be afforded general authority, by rule of court or statute, to award costs if costs are to be recovered. While Rule 54(E) and NMSA 1978, Section 39–3–30 (Repl. Pamp.1991), authorize district courts to award costs to the prevailing party in civil actions, neither the rule nor the statute specifies what items may be recovered. When a statute allowing recovery of costs does not enumerate the items of recoverable costs, "the allowance or disallowance of particular costs is confided primarily to the discretion of the district court." 20 Am. Jur.2d *Costs* § 52 (1965). Accordingly, this Court has held that the district court has discretion in assessing costs, and its ruling will not be disturbed on appeal unless it is an abuse of discretion. *Pioneer Sav. & Trust, F.A. v. Rue*, 109 N.M. 228, 231, 784 P.2d 415, 418 (1989). We emphasize today that under the authority granted by Rule 54(E) and Section 39–3–30, the district court has the discretion to award prevailing

parties necessary and reasonable costs incident to their prosecution or defense of an action. *See generally* 6 James W. Moore et al., *Moore's Federal Practice* ¶ 54.77[1] (2d ed. 1993) (discussing the federal courts' power to tax expenses as costs under Fed. R.Civ.P. 54(d), virtually identical to New Mexico's Rule 54(E), and the proper exercise of discretion in using that power).

■ The district court should exercise this discretion sparingly when considering expenses not specifically authorized by statute and precedent. *See Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964); *Mist v. Westin Hotels, Inc.*, 69 Haw. 192, 738 P.2d 85, 92 (1987). Statutory authority for recovery of the "costs and expenses" of taking depositions is found in NMSA 1978, Section 39-2-7 (Repl.Pamp.1991). *See Danielson v. Miller*, 75 N.M. 170, 172, 402 P.2d 153, 155 (1965) (deposition expense is a proper item of legal court costs). NMSA 1978, Section 38-6-4 (Repl.Pamp.1987), provides statutory authority for the recovery of the costs of per diem expenses and mileage for all witnesses, as well as a reasonable fee for an expert witness on liability and an expert witness regarding damages. The court may allow additional expert witness fees if it finds "that the additional expert testimony was reasonably necessary to the prevailing party and the expert testimony was not cumulative." Section 38-6-4. Other costs held to be within the discretion of the court to award include those for transcript fees, special masters' fees, filing fees, fees for recording notices of lis pendens, fees for service of process, and receivers' fees. *Pioneer Sav. & Trust*, 109 N.M. at 231, 784 P.2d at 418. This Court has also found no abuse of discretion in an award of costs for the expense of depositions not used at trial, *Davis v. Severson*, 71 N.M. 480, 490, 379 P.2d 774, 784 (1963), and for the costs of photocopies of depositions, *Budagher v. Sunnyland Enters., Inc.*, 90 N.M. 365, 367, 563 P.2d 1158, 1160 (1977). This list of taxable expenses is not exclusive, but is indicative of the costs historically considered by our legislature and courts to be recoverable under Rule 54(E).

■ As a matter of policy, all costs submitted by the prevailing party (or by the party entitled to recover costs under Rule 68) should be carefully scrutinized by the district court, in the interest of "reducing insofar as possible the burdensome cost of litigation." *Farmer*, 379 U.S. at 235, 85 S.Ct. at 415.

> Any other practice would be too great a movement in the direction of some systems of jurisprudence that are willing, if not indeed anxious, to allow litigation costs so high as to discourage litigants from bringing lawsuits, no matter how meritorious they might in good faith believe their claims to be.

*Id.* The district court's exercise of sound judicial discretion in taxing expenses as costs thus should be informed by considerations of promoting economy in litigation.

## VI.

In summary, we withdraw UJI Civil 1617 from use in negligence cases because the instruction is unnecessary, confusing, and likely to emphasize unduly one party's theory of the case. Since the district court in the present case properly instructed the jury on the standard of care to be observed by both plaintiff and defendant, the Court of Appeals is reversed on this issue and the jury verdict is reinstated. The Court of Appeals is also reversed on the question whether Dunleavy's recovery should include her preoffer costs for comparison with Miller's offer of judgment under Rule 68. The case is remanded to the district court for determination of Dunleavy's taxable preoffer costs and recalculation of her net award, costs then to be assessed consistently with this opinion.

**IT IS SO ORDERED.**

FRANCHINI and FROST, JJ., concur.