38

1999-NMCA-028

976 P.2d 523

**Jack KEY and Jack Key Motor Company, Inc., Plaintiffs/Appellants/Cross–Appellees,**

v.

**CHRYSLER MOTORS CORPORATION, Defendant/Appellee/Cross–Appellant.**

No. 18,633.

Court of Appeals of New Mexico.

Dec. 29, 1998.

Certiorari Granted, No. 25,562, Feb. 12, 1999.

Norman E. Todd, Norman Todd Law Office, Las Cruces, for Appellant/Cross–Appellee.

Barney James Reeves, William R. Anderson, Reeves, Chavez, Greenfield & Walker, P.A., Las Cruces, for Appellee/Cross–Appellant.

## OPINION

ALARID, Judge.

{1} This appeal and cross appeal come at the end of protracted litigation that has already found its way to this Court and the Supreme Court once before. At issue now is the district court's order awarding costs. Jack Key and Jack Key Motor Company, Inc. (Key), appeal the order contending that the award of costs should be reduced or eliminated altogether. Chrysler Motors Corporation (Chrysler) cross appeals arguing that the cost award should be increased.

For the reasons that follow, we affirm in part and reverse in part.

**FACTUAL BACKGROUND**

{2} This case arises out of a dispute under the New Mexico Motor Vehicle Dealers Franchising Act (the Act). *See* NMSA 1978, §§ 57–16–1 to –16 (1997). Key filed suit against Chrysler, alleging that Chrysler violated the Act by unreasonably refusing to consent to Key's prospective purchase of a Chrysler dealership franchise. Key succeeded in obtaining a judgment in district court awarding Key $300,000 in damages. Chrysler had tried on several occasions in district court to have Key's complaint dismissed based on lack of standing under the Act. Chrysler reasserted its standing argument in this Court with no success. However, Chrysler successfully petitioned for certiorari in the Supreme Court. The Supreme Court agreed with Chrysler's standing argument, reversed the district court's judgment, and remanded for entry of judgment in favor of Chrysler. *Seè Key v. Chrysler Motors Corp.*, 121 N.M. 764, 778, 918 P.2d 350, 364 (1996) (*Key I* ).

{3} Upon remand to the district court, Chrysler filed a cost bill asking for an award of $291,105.23 in costs. Key objected to the cost bill, and a hearing was held on the matter. At the hearing, Chrysler voluntarily deducted $28,723.64 from its original cost bill. Chrysler also presented the testimony of one of its trial attorneys, George Finger, to establish the reasonableness and nècessity of its costs. Key did not present any evidence at the hearing. Key argued, however, that Chrysler's request for costs should be reduced or denied because: (1) the Supreme Court had already ruled that each party was to bear its own costs; (2) Chrysler was not the prevailing party entitled to costs; (3) Chrysler's expert witness fee was not reasonable and necessary; (4) other costs requested by Chrysler were not directly associated with the trial of the case; (5) the award of a large cost bill would have a chilling effect on future litigation under the Act; and (6) a large cost award was inappropriate in light of the financial disparity between the parties.

{4} The district court ruled that with the exception of some of the photocopying charges, all of the items in Chrysler's 'cost bill would be allowed. However, the district court then reduced the allowed costs by 80% in consideration of Key's ability to pay, the difference between the resources of Key and Chrysler, and because of the chilling effect of a large cost award in this case. Consequently, Key was only required to pay $47,570.52 in costs to Chrysler.

**DISCUSSION**

{5} In general, the costs of litigation may be recovered by the prevailing party. *See* Rule 1–054(E) NMRA 1998 (costs allowed as a matter of course to the prevailing party unless court otherwise directs); NMSA 1978, § 39–3–30 (1966) (prevailing party shall recover costs "unless the court orders otherwise for good cause shown"). Costs are considered to be a statutory allowance for expenses incurred in litigation. *See Dunleavy v. Miller*, 116 N.M. 353, 362–63, 862 P.2d 1212, 1221–22 (1993). In this regard, the district court has the discretion to award the prevailing party its necessary and reasonable costs incident to its prosecution or defense of the action. *Id.* at 362, 862 P.2d at 1221. On appeal, the district court's ruling will not be disturbed absent an abuse of that discretion. *See Pioneer Sav. & Trust, F.A. v. Rue*, 109 N.M. 228, 231, 784 P.2d 415, 418 (1989). However, "[t]he district court should exercise [its] discretion sparingly when considering expenses not specifically authorized by statute and precedent." *Dunleavy*, 116 N.M. at 363, 862 P.2d at 1222.

{6} Because the judge who ordered the cost award in this case was not the same judge who presided over the trial, Key argues that this Court is in as good a position to evaluate Chrysler's cost bill, suggesting that we need not apply the deferential abuse-of-discretion standard of review in this appeal. Key has not cited any authority to support this argument. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (arguments unsupported by cited authority need not be considered on appeal). In any event, we simply note that live testimony was presented on the hearing on Key's objections to Chrysler's cost bill. Thus, we remain committed to applying the abuse-of-discretion standard of review.

## I. Is Chrysler Entitled to All, Part, or None of Its Costs?

### A. Supreme Court Mandate

■ {7} Key initially argues that the district court should not have awarded costs because the Supreme Court declined to award costs in its opinion in *Key I* even though it ruled in favor of Chrysler on the merits. As Chrysler correctly observes, the Supreme Court's original opinion provided that "[n]o costs are awarded." *Key I*, S.Ct. No. 22,587 slip op. at 22 (Filed May 31, 1996). Because of this statement in the original opinion, Chrysler filed a motion in which it requested clarification regarding Chrysler's right to costs at the district court level. The Supreme Court denied the motion but revised the opinion to state that "[n]o appellate costs are awarded." *Key I* 121 N.M. at 778, 918 P.2d at 364. We agree with Chrysler that the Supreme Court's amended opinion demonstrates that the Supreme Court limited its ruling to the award of costs on appeal.

{8} Key also argues that as a matter of consistency the district court should have denied Chrysler's trial costs since Chrysler was not allowed to recover its appellate costs. We disagree. If the Supreme Court had perceived any potential inconsistency, it could have directed that Chrysler was not to be awarded its trial costs. Instead, the Supreme Court's actions underscore the fact that New Mexico courts are afforded discretion in the award of costs. In short, we believe the Supreme Court intended to allow the trial court to exercise its own sound discretion with regard to the award of costs at the trial court level.

### B. Prevailing Party

■ {9} Key also argues that even if the Supreme Court's decision did not explicitly preclude the award of costs at the district court level, the district court should not have awarded Chrysler its costs because Chrysler did not prevail at trial. However, Key's argument ignores the fact that while Key may have won the battle at trial, it lost the war on appeal. *See Rodriguez v. Handy*, 873 F.2d 814, 817 (5th Cir.1989) (Prevailing party "refers to prevailing at the time of final judg-

ment, not to winning a single round."); *Givens v. Lederle*, 556 F.2d 1341, 1346 (5th Cir.1977) (where plaintiffs lost first trial but were granted new trial and prevailed at second trial, plaintiffs were entitled to costs of first trial as ultimate prevailing party); *see also South v. Lucero*, 92 N.M. 798, 804, 595 P.2d 768, 774 (Ct.App.1979) (party who wins lawsuit is prevailing party); *Read v. Western Farm Bureau Mut. Ins. Co.*, 90 N.M. 369, 376, 563 P.2d 1162, 1169 (Ct.App.1977) ("The taxation of costs must await the final determination of the case."). Accordingly, we hold that the district court did not err in awarding Chrysler some of its trial costs even though Chrysler initially lost at the trial court level.

### C. Financial Disparity of the Parties and the Chilling Effect of a Large Cost Award

■ {10} Even though the district court reduced Chrysler's cost award by 80%, Key argues that the district court should have completely denied Chrysler's costs because of the financial disparity of the parties. In contrast, Chrysler argues that the district court abused its discretion in reducing its cost award because of a perceived disparity between Key's financial resources and those of Chrysler. New Mexico case law provides that the district court may use its discretion to deny or limit an award of costs to the prevailing party when the losing party lacks the resources to pay the cost award. *See Gallegos v. Southwest Community Health Serv.*, 117 N.M. 481, 489–91, 872 P.2d 899, 907–09 (Ct.App.1994).

{11} Chrysler maintains that the district court abused its discretion because Key failed to present any evidence to establish the financial condition of the parties. We disagree. First, the court appropriately took note of the "gross disparity between the size and resources of the litigants." Indeed much of Chrysler's sizable cost bill seems to have been incurred based on Chrysler projecting the national impact of a potential award for Key in this case, which means that Key was being asked to pay costs beyond the normal anticipated scope of one lawsuit. Second, the court was concerned about Key's ability to pay such a large award. Although the evi-

dence of ability to pay was somewhat ambiguous, counsel for Key characterized that evidence to the court, without objection from Chrysler, as showing Key's business value to be less then $200,000. Appellate counsel for Key made a similar representation to this Court which Chrysler did not specifically deny. It is up to the trial court to draw appropriate inferences from the evidence. Given that the amount of costs initially allowed by the district court were in excess of $260,000, we cannot say that the district court abused its discretion in reducing the award. *See Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir.1983) (inability to pay a proper factor to consider in denying costs); *Boas Box Co. v. Proper Folding Box Corp.*, 55 F.R.D. 79, 81 (E.D.N.Y.1971) (court may limit costs where large cost award could prove disastrous to small business). To the extent that Key maintains the financial disparity of the parties required the denial of all costs, we simply point out that Key failed to present any proof that it could not pay the $42,000 in costs ultimately awarded by the court.

■ {12} Key also suggests that any award of costs in this case will have a chilling effect on the willingness of similarly situated plaintiffs who may want to bring suit under the Act. Key maintains that the Act is remedial in nature and is intended to provide a cause of action for individual dealers against large automobile manufacture's. But even if the Legislature may have intended to provide certain remedies and protections to individual car dealers who bring suit under the Act, we do not believe the Legislature demonstrated an intention to provide a blanket prohibition against cost awards to automobile manufacturers when a lawsuit fails under the Act. As Chrysler points out, when the Legislature has wanted to restrict cost awards against unsuccessful plaintiffs who pursue statutory remedies, the Legislature has clearly said so. *See* NMSA 1978, § 57–12–10(C) (1987) (defendants who prevail in lawsuit brought under Unfair Practices Act may only recover costs if the lawsuit was groundless); NMSA 1978, § 57–13–6(B) (1987) (costs recoverable by defendant sued under Pyramid Promotional Schemes Act if plaintiff knew action was groundless); NMSA 1978,

§ 47–9–7 (1991) (court may award costs to defendant if it determines that plaintiff's action was frivolous); *see also Patterson v. Globe Am. Cas. Co.*, 101 N.M. 541, 543, 685 P.2d 396, 398 (Ct.App.1984) (where Legislature expressly provides certain remedies in some statutes, its failure to create same remedies in another statute shows by negative inference that Legislature did not intend to create such a remedy).

{13} Chrysler also argues that the district court should not have considered the chilling effect of large cost awards because no evidence was presented on the issue. Chrysler claims that Key's attorney merely speculated on the chilling effect of large cost awards during his argument to the district court. *See Russell v. Russell*, 106 N.M. 133, 137, 740 P.2d 127, 131 (Ct.App.1987) ("Arguments of counsel ... are not evidence."). However, Chrysler never specifically argued to the trial court that it needed a factual record regarding the chilling effect of large cost awards under the Act. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) (to preserve argument for appeal "it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court"). Moreover, we question whether the district court needed an evidentiary record to support its common-sense observation that extremely large cost awards may discourage car dealers from seeking relief under the Act. *Cf. Corn v. New Mexico Educators Fed. Credit Union*, 119 N.M. 199, 207–08, 889 P.2d 234, 242–43 (Ct.App.1994) (upholding trial court's findings and conclusions regarding chilling effect attorney fee cap would have on ability of workers to secure legal representation for workers' compensation cases). Under the circumstances, we do not believe the district court was compelled to either completely deny or completely award all of Chrysler's costs. In our view, the district court properly exercised its discretion when it decided to partially reduce the cost award in this case because of the financial disparity between the parties, Key's perceived inability to pay all of Chrysler's costs, and the chilling effect that a large cost award would have on future litigation under the Act.

## II. Was the Fee of Chrysler's Expert Witness Reasonable and Necessary?

{14} In addition to asking for the total denial of Chrysler's cost bill, Key argues that this Court should substantially reduce the amount that the district court allowed for Chrysler's expert witness, Herb Walter, CPA, of Price Waterhouse. In particular, Key contends that the expert witness fee that was allowed is unreasonable because it was not limited to the time actually spent by the expert in preparing for trial, attending trial, and testifying at trial and deposition. *See American Water Dev., Inc. v. City of Alamosa,* 874 P.2d 352, 389 (Colo.1994) (en banc) (cost of expert witness fees may be taxed for time actually spent in court and in preparing for trial). However, we do not believe the limitation urged by Key has support in the statute that authorizes the award of expert witness fees as costs.

{15} NMSA 1978; Section 38–6–4(B) (1983), provides that "a reasonable fee to compensate the witness for the time required in preparation or investigation prior to the giving of the witness's testimony" may be taxed as costs. In addition to the time Mr. Walter spent actually preparing for and testifying at trial; Chrysler presented testimony to show that Mr. Walter spent additional time analyzing and investigating the reports prepared by Key's expert witness on the issue of damages. The testimony submitted by Chrysler suggested that Mr. Walter's fee was reasonable and necessary because his work prior to trial was instrumental in rebutting Key's multi-million dollar claim for damages, and Chrysler credited Mr. Walter's work with limiting the judgment that Key obtained at trial to only $300,000. In light of this testimony, we cannot say that the district court abused its discretion in ruling that Mr. Walter's expert witness fee was reasonable and necessary. *See Ulibarri Landscaping Material, Inc. v. Colony Materials, Inc.,* 97 N.M. 266, 271, 639 P.2d 75, 80 (Ct.App. 1981) (where expert's testimony was based largely on survey, expense of survey properly allowed as cost under Section 38–6–4(B) as time expended in preparation and investigation prior to trial).

{16} We recognize that Key also believes the amount of the fee was excessive, in part, because it exceeded the value of Key's entire business. However, as discussed above, the value of Mr. Walter's services appears more reasonable when viewed in light of the effect that his work may have had on the issue of damages. Thus, although Key questions the reasonableness of Mr. Walter's fee because it exceeded the value of Key's business, there was other conflicting evidence in the record to suggest that Mr. Walter's fee was reasonable when viewed in light of other factors. Similarly, although Key relies on the fact that Mr. Walter's hourly rate exceeded other experts and attorneys involved in this case, we believe that is simply conflicting evidence for the district court to resolve. *See generally Sanchez v. Homestake Mining Co.,* 102 N.M. 473, 476, 697 P.2d 156, 159 (Ct.App.1985) (trier of fact, not appellate court, weighs testimony). However, those who utilize experts whose fees reach the level reached here certainly run the risk of the law being changed to bar fees which shock the conscience or otherwise bring the civil justice system into disrepute.

## III. Did the District Court Abuse its Discretion in Awarding Certain Costs?

{17} Key also argues that the district court abused its discretion in awarding Chrysler its costs for long-distance phone charges, fax charges, federal express charges, delivery charges, and photocopy charges. Key argues that no New Mexico precedent exists for allowing long-distance phone charges, fax charges, federal express charges, and delivery charges. *See Dunleavy,* 116 N.M. at 363, 862 P.2d at 1222 (courts should exercise their discretion sparingly to tax as costs those expenses not specifically authorized by statute or precedent). We agree and therefore reverse the district court's award of costs for these charges.

{18} To the extent that both parties question the amount of photocopying charges allowed by the district court as costs, we first note that the district court is specifically authorized to award such costs by New Mexico precedent. *See Budagher v. Sunny-*

*land Enters., Inc.*, 90 N.M. 365, 367, 563 P.2d 1158, 1160 (1977). Moreover, we believe the district court appropriately exercised its discretion to reduce the photocopy charges by almost 50% in response to Key's complaint that much of the photocopy charges were the result of Chrysler's decision to copy many of the documents six times for distribution to several attorneys.

## IV. Did the District Court Abuse Its Discretion in Disallowing Chrysler's Costs for Computer–Assisted Legal Research?

{19} Chrysler argues that the district court abused its discretion by refusing to award it the costs of its computer-assisted legal research. In support of its position, Chrysler cites to some jurisdictions which have allowed for the award of such costs. *See, e.g., Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir.1991); *Wehr v. Burroughs Corp.*, 619 F.2d 276, 285 (3 Cir.1980); *but see Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 38 F.3d 1429, 1440 (7th Cir. 1994). However, our research indicates that most courts decline to award costs for computerized legal research. *See* 6 Moore's Federal Practice, ¶ 54.77[8] at 54419 (2d ed.1996); Gary Knapp, Annotation, *Recoverability of Cost of Computerized Legal Research Under 28 U.S.C. § 1920 or Rule 54(d), Federal Rules of Civil Procedure*, 80 A.L.R. Fed. 168 (1986). We join the majority of courts which have declined to award as costs the charges for computer-assisted legal research. We recognize that Chrysler advocates awarding costs for computerized legal research because it is intended to save attorney time in performing manual research. But as such, the costs associated with computerized research are akin to attorney fees. *See Haroco, Inc.*, 38 F.3d at 1440. Since Chrysler is not entitled to attorney fees in this case, we do not believe the district court abused its discretion in refusing to tax as costs Chrysler's charges for computer-assisted legal research.

## CONCLUSION

{209B Based on the foregoing, we affirm in part and reverse in part the district court's order awarding costs.

{21} **IT IS SO ORDERED.**

BOSSON, J., concurs.

HARTZ, C.J., concurs in part and dissents in part.

HARTZ, C.J., concurring in part and dissenting in part.

{22} I concur in Judge Alarid's opinion except for affirmance of the district court's decision to reduce the cost award by 80%.

{23} Hard cases can make bad law. Chrysler's claim of $210,514.93 in expert witness fees is extraordinarily high. But our aversion to that claim should not lead us to overlook Key's failure to mount a proper challenge in district court.

{24} The district court found that the fee was reasonable. I have my doubts about that finding. Chrysler argued that it needed to make an all-out effort to defend its measures for evaluating franchises, because an adverse ruling would have ramifications throughout the country. I wonder, however, whether it is appropriate to burden Key with costs that cannot be justified by the potential liability in Key's case alone. Perhaps it was reasonable for Chrysler, given its interests nationwide, to spend what it did on an expert. Yet, requiring Key to pay all those costs may well be unreasonable, given the limited financial impact of a judgment in Key's case alone. That was not, however, an argument raised by Key in district court, and I agree with the majority opinion that we must defer to the district court's discretion in rejecting Key's district court challenges to the reasonableness of the fee.

{25} Where I part company with the majority is in their affirmance of the district court's reduction by 80% of the total cost award. The factual predicate for that reduction is Key's inability to pay the full award. To be sure, most litigants could not afford to pay $200,000 in costs. The problem here is that Key offered no evidence of his financial condition. The majority opinion refers to "somewhat ambiguous" evidence presented at the cost hearing that showed "Key's business value to be less than $200,000." But the

$200,000 figure referred to an estimate of the value of the franchise that was the subject of this litigation—the franchise that Key had hoped to acquire but that Chrysler had denied him. There was no evidence of Key's personal wealth or the net worth of his corporation. Chrysler has not conceded the issue; rather it has contended on appeal that the record is "absolutely devoid of any evidence of the financial condition of Key which would otherwise demonstrate his ability or inability to pay Chrysler's costs in full ."

{26} The failure of Key to establish his inability to pay the cost award is critical, because otherwise the disparity in wealth between Chrysler and him is immaterial. Disparity in wealth alone is insufficient to justify a reduction in the cost award. In *Cafeteria Operators, L.P. v. Coronado–Santa Fe Assoc. L.P.*, 1998–NMCA–005, ¶ 37, 124 N.M. 440, 952 P.2d 435, we wrote: "We agree that a party should not be denied an award of costs simply because it can 'afford to swallow' the expense." The leading federal authorities state that disparity of wealth is not in itself a ground to deny or limit costs to the prevailing party. *See Smith v. Southeastern Pennsylvania Transp. Auth.*, 47 F.3d 97, 99–100 (3rd Cir.1995); *Reed v. International Union of Auto., Aerospace, & Agric. Implement Workers*, 945 F.2d 198, 204 (7th Cir.1991); 10 James Wm. Moore, *Moore's Federal Practice*, § 54–101[1][b] at 54–153 (3d ed.1998). If we were to recognize a relative-wealth exception to the general rule that the prevailing party is entitled to recover its costs, the exception would consume the rule. For example, if an insurance company bore the expense for one side in the litigation, the insurance company would not be able to recover its costs. So often is one party much stronger financially than the other, that one would expect the relative-wealth exception to have been incorporated into the rules and statutes governing costs if their authors had intended courts to recognize the exception.

{27} Relative wealth of the parties is a proper consideration only if other compelling considerations are present, such as when the losing party is unable to pay costs. *See Smith*, 47 F.3d at 100. (If the prevailing party is as poor as the loser, why should the loser be relieved of the duty to pay costs?) Costs might also be reduced or denied if the wealthier party improperly exploited its superior financial resources in a bad faith effort to wear out the opposition by driving up the costs of discovery, etc. But that was not the situation here.

{28} Finally, I disagree with the majority's view that the district court could properly consider whether an award of costs would discourage litigation. Does litigation serve such a useful function in society that we should refrain from discouraging *meritless* claims? After all, Key lost his lawsuit. If there is any trend in the law, particularly tort law, in recent decades, it is that one should bear the costs that one imposes on others. Why should we move in the opposite direction with respect to the costs of litigation? Key imposed substantial expenses on Chrysler by filing his unsuccessful claim. What is the social benefit in exempting him from reimbursing Chrysler for the customary items in those expenses?

{29} The only authority cited by the majority consists of three statutory provisions on costs. But as I understand those statutes, they are designed to enable a defendant to recover attorney fees when the plaintiff's claim is groundless. *See* NMSA 1978 §§ 47–9–7 (1991), 57–12–10(C) (1987), 57–13–6(B) (1987). None would preclude a prevailing defendant from recovering the usual costs.

{30} I am aware that on occasion courts have expressed concern about discouraging litigation by failing to award sufficiently high attorney fees or costs. The issue in those cases, however, is whether the *prevailing* party is adequately reimbursed. It is one thing to remove an impediment to meritorious litigation by trying to protect against an empty victory—when the cost of prevailing exceeds the benefits. It is quite another to subsidize losing efforts.

{31} As far as I can tell, for quite some time it has been considered desirable that a litigant take into account that if it loses it will have to absorb the opposing party's costs. Taking cost shifting into account encourages sensible behavior, including settlement. Indeed, the prospect of cost shifting is the foundation of Rule 1–068 NMRA 1998, which

provides for offers of judgment. Defendants are encouraged to make reasonable offers by the incentive of escaping the obligation to pay costs incurred after the offer if the ultimate judgment is less than the offer. The rule likewise encourages plaintiffs to *accept* reasonable offers of judgment. If costs are not shifted in certain types of "desirable" litigation, the incentives of Rule 1–068 disappear.

{32} Perhaps the Legislature will one day decide that some types of litigation are so desirable that a losing plaintiff should not have to pay ordinary costs. I doubt, however, that litigation under the Motor Vehicle Dealers Franchising Act will head the list.